# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| THOMAS EDWARD CLUTTS, JR., | No. 20-CV-80-CJW-KEM |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| vs. | |
| TYRUS LESTER, | |
| Defendant. | |

_____

## I. INTRODUCTION

This matter is before the Court on a motion to dismiss (Doc. 36) brought by defendant Tyrus Lester under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Thomas Clutts did not file a resistance. Oral argument is not necessary. *See* L.R. 7(c). For the following reasons, the Court grants defendant's motion.

## II. BACKGROUND

On August 7, 2020, plaintiff filed a pro se complaint (Doc. 1) asserting that federal officials violated his Fourteenth Amendment Due Process and Eighth Amendment rights. Plaintiff alleges that on August 26, 2019, one of the Deputy United States ("U.S.") Marshals that accompanied him to his sentencing hearing shoved him on the way out of the courtroom after the conclusion of his sentencing hearing. (Doc. 1, at 5). On January 20, 2021, the Court entered an initial review order that: (1) granted plaintiff's motion to proceed in forma pauperis; (2) dismissed all defendants except Ty Duncan, the name plaintiff initially used to identify defendant Tyrus Lester; (3) dismissed claims of deliberate indifference to serious medical needs to the extent plaintiff's complaint asserts such a claim; and (4) allowed plaintiff's excessive force claim under *Bivens v. Six*

*Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[1] against Ty Duncan to proceed. (Doc. 5). The Court noted that it "does not at this stage have sufficient information to determine whether [defendant] used force against plaintiff in a good faith manner or whether it was excessive." (Doc. 5, at 7). In a November 17, 2022 order, the Court concluded plaintiff actually is attempting to sue Deputy U.S. Marshal Tyrus Lester, rather than Ty Duncan. (Doc. 25).

On March 13, 2023, defendant Lester filed a motion to dismiss (Doc. 36), arguing that plaintiff's claim of excessive force against defendant fails as a matter of law because (1) plaintiff seeks a new application of *Bivens* that is foreclosed and (2) plaintiff's claim is barred by qualified immunity. Plaintiff's resistance to the motion initially was due by March 27, 2023. *See* L.R. 7(e) ("Each party resisting a motion must, within 14 days after the motion is served, file a resistance in the form of a brief containing a statement of the ground for resisting the motion and citations to the authorities upon which the resisting party relies."). However, the Court's most recent mailings to plaintiff at FCI Terre Haute in Terre Haute, Indiana were returned as undeliverable (Docs. 37, 38), and the Bureau of Prisons website indicates that plaintiff is now incarcerated at FCI Butner Medium II in Butner, North Carolina. On April 5, 2023, the Court forwarded the documents to that address, and defendant mailed a copy of the motion to dismiss to the FCI Butner facility the next day. (Docs. 38, 39). Plaintiff has not filed a resistance in the ensuing eight weeks, and the Court will rule without a response. *See* L.R. 7(f) ("If no timely resistance to a motion is filed, the motion may be granted without notice.").

---

[1] *Bivens* allows persons claiming a constitutional violation to assert a monetary claim against individuals working for the federal government. "The effect of [*Bivens*] was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to [a 42 U.S.C.] § 1983 action against state officials." *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980); *see also Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337–38 (9th Cir. 1987).

### III.     MOTION TO DISMISS STANDARD

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).  In doing so, the court must draw reasonable inferences in plaintiff's favor.  *Zink v. Lombardi,* 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.,* 782 F.3d 931, 934 (8th Cir. 2015) (citation and internal quotations omitted).  Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Bell Atlantic Corp v. Twombly,* 550 U.S., 544, 555).  Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555 (citation omitted).  Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement."  *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'"  *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).  Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'"  *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)).  Although *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory.  *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*,

3

680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In deciding a motion brought under Rule 12(b)(6), the court may consider certain materials outside the pleadings, including (a) "the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and (b) "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Thus, the court may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller*, 688 F.3d at 931 n.3 (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

Courts must liberally construe pro se complaints. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Nevertheless, a court may dismiss a pro se complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2). In reviewing an in forma pauperis complaint, a court must weigh the facts alleged in favor of the plaintiff unless they are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Pro se complaints, however, must allege sufficient facts to support the plaintiff's claim. *Stone*, 364 F.3d at 914. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

## IV.    DISCUSSION

Defendant moves to dismiss the complaint against him arguing that the claim against him is a novel and improper extension of the limited claims allowed under *Bivens*, and alternatively, that he should be granted qualified immunity on the claim. (Doc. 36). As previously noted, plaintiff did not file a resistance. The Court finds that plaintiff's claim is a novel and impermissible extension of the narrow causes of action allowed under *Bivens* and, alternatively, that defendant is entitled to qualified immunity.

### A.    *Plaintiff's Claim Is Impermissible Under* Bivens

In *Bivens*, the United States Supreme Court authorized a cause of action against federal officials for damages based on a deprivation of constitutional rights. 403 U.S. at 391-92, 399. The Supreme Court has only recognized a cause of action under *Bivens* on three occasions. *Farah v. Weyker*, 926 F.3d 492, 497 (8th Cir. 2019). In *Bivens* itself, the Supreme Court recognized an implied cause of action against agents of the Federal Bureau of Narcotics for an unreasonable search and seizure under the Fourth Amendment. *Bivens*, 403 U.S. at 397. In *Davis v. Passman*, 442 U.S. 228, 230-32 (1979), the Supreme Court recognized a cause of action against a member of Congress under the Fifth Amendment Due Process Clause for gender discrimination in employment. In *Carlson v. Green*, 446 U.S. 14, 16 n.1, 19 (1980), the Supreme Court recognized a cause of action against federal prison officials under the Eighth Amendment for deliberate indifference to a serious medical need of an inmate.

"Since then, the Court has become far more cautious and has, in fact, consistently refused to extend *Bivens* to any new context or new category of defendants for almost forty years." *Farah*, 926 F.3d at 498 (cleaned up). *See Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (identifying only *Bivens*, *Davis* and *Carlson* as recognized causes of action). Since *Carlson* was decided in 1980, the Supreme Court has never implied an additional cause of action under the Constitution. *See id.* ("for almost 40 years, we have

5

consistently rebuffed requests to add to the claims allowed under *Bivens*."); *Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022) (the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations") (citations omitted). Indeed, in 2017, the Supreme Court stated expanding *Bivens* is "now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). It follows, then, that there is a presumption against expanding *Bivens* beyond the few and narrow contexts explicitly recognized by the Supreme Court. *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005).

After *Ziglar* and *Egbert*, courts employ a two-step analysis to determine whether to recognize a *Bivens* action. *Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020). First, courts consider whether the case falls within one of the three *Bivens* claims recognized by the Supreme Court. *Farah*, 926 F.3d at 498. If a court finds the Supreme Court has recognized the context previously, the case may proceed. *Id*. If the court finds the case does not fall within one of the recognized actions, courts assess whether "any special factors counsel hesitation before implying a new cause of action." *Ahmed*, 984 F.3d at 567 (quoting *Farah*, 926 F.3d at 498 (internal quotation marks and brackets omitted)). Courts must reject the new cause of action if there is reason to hesitate before applying *Bivens* to a new context. *Id*. at 567-68. These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803.

### 1. *New* **Bivens** *Context*

Turning to the first step—whether the case presents a new context—if plaintiff's case is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Ziglar*, 582 U.S. at 139. The Supreme Court has set forth that a case might be held to "meaningfully" differ from a previously recognized case for reasons that include:

6

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Ziglar*, 582 U.S. at 139-40. The Supreme Court's "understanding of a 'new context' is broad," *Hernandez*, 140 S. Ct. at 743, and "even a modest extension [of *Bivens*] is still an extension." *Ziglar*, 582 U.S. at 147.

Applying these principles here, the Court finds that plaintiff's claim presents a new *Bivens* context. The Supreme Court has not recognized a *Bivens* cause of action for excessive force in violation of the Eighth Amendment. Even though *Carlson* involved an Eighth Amendment claim, that claim was based on deliberate indifference to an inmate's medical needs for failing to treat his asthma. As the Supreme Court has stated, a "claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized," and courts must "look beyond the constitutional provisions invoked." *Hernandez*, 140 S. Ct. at 743. "While both Plaintiff's case and *Carlson* involve Eighth Amendment claims, the facts of the cases and the nature of the alleged violations are different." *Dotson v. Fed. Bureau of Prisons*, No. 2:21CV00147-BSM-JTK, 2022 WL 3138706, at *3 (E.D. Ark. June 21, 2022), *report and recommendation adopted,* No. 2:21-CV-00147-BSM, 2022 WL 3084150 (E.D. Ark. Aug. 3, 2022), *aff'd,* No. 22-3470, 2023 WL 3704933 (8th Cir. Jan. 3, 2023) (holding that Eighth Amendment conditions of confinement claim is a new context differing in a meaningful way from an Eighth Amendment deliberate indifference to a medical need claim). "Courts have consistently found that excessive force cases arising under either the Fifth or Eighth Amendment to present new *Bivens* contexts." *Edwards v. Gizzi*, No. 20-CV-7371, 2022 WL 309393, at *6 (S.D.N.Y. Feb.

7

2, 2022) (holding that plaintiff's excessive force claim against Deputy U.S. Marshals for breaking his arm in the courtroom amidst sentencing hearing presented a new *Bivens* context "whether it arises under the Fifth or Eighth Amendment"). Plaintiff's Eighth Amendment excessive force cause of action is materially different from *Bivens*, *Davis*, and *Carlson*.

Plaintiff also claims a violation of the Due Process Clause of the Fourteenth Amendment. However, the Fourteenth Amendment, by its very terms, applies only to state actors, not to federal officials. U.S. Const. amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."). Thus, a plaintiff cannot assert a *Bivens* claim against a federal official based on the Fourteenth Amendment.

To the extent that plaintiff is attempting to assert an excessive force claim under the Due Process Clause of the Fifth Amendment, such a claim is also impermissible. First, the actions plaintiff alleges constitute excessive force occurred at the conclusion of his sentencing and, as a convicted and sentenced prisoner rather than a pretrial detainee, the Eighth Amendment, not the Fifth Amendment, applies to his excessive force claim.[2] Second, an excessive force claim under the Fifth Amendment is also a new *Bivens* context. *See McIntyre v. United States Marshal Serv.*, No. CV181268KMMAH, 2023 WL 2447424, at *1 (D.N.J. Mar. 10, 2023) (holding that a claim of shackling plaintiff

---

[2] The plaintiff's status at the time of the alleged excessive force affects the constitutional standard. *See Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) ("[T]he constitutional standard applied may vary depending on whether the victim is . . . a pretrial detainee, or a convicted inmate of a penal institution."). Courts analyze excessive force claims of pretrial detainees under the due process clause and claims of convicted inmates under the Eighth Amendment's cruel and unusual punishment prohibition. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).

8

pretrial detainee in the courtroom was a new context and the *Davis* claim of gender discrimination under the Fifth Amendment "could hardly be more different from the circumstances here, involving courtroom security"); *Hammond v. Two Unknown Named Agents of U.S. Marshals Serv.*, No. 20-4298, 2023 WL 2025206, at *4 (D.S.C. Jan. 9, 2023) (finding that excessive force claims against Deputy U.S. Marshals by a pretrial detainee leaving a courtroom involve "facts that are materially different from those addressed in *Bivens, Davis*, and *Carlson*"), *report and recommendation adopted*, 2023 WL 2025171 (D.S.C. Feb. 15, 2023). Even though a Fifth Amendment violation formed the basis for the claim in *Davis*, that gender discrimination in employment claim materially differs in the nature of the violation from the excessive force claim herein.

In addition, the position and responsibilities of a Deputy U.S. Marshal in a courtroom differs from the Federal Bureau of Narcotics agents in *Bivens*, the Congressional employer in *Davis*, and the federal prison officials in *Carlson*. Numerous courts have found that the position of Deputy U.S. Marshals renders claims meaningfully different. *See, e.g., Logsdon v. U.S. Marshal Serv.*, No. 21-253, 2023 WL 205052, at *3 (E.D. Okla. Jan. 13, 2023) (finding a new context based in part on a new category of defendants when "the officers here were employed by the U.S. Marshals Service, not the Bureau of Narcotics"); *Lewis v. Westfield*, No. 16-CV-1057, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022) ("Plaintiff's excessive-force and failure-to-intervene claims present a new *Bivens* context" because "defendants are Deputy Marshals, rather than federal narcotics agents."); *Edwards*, 2022 WL 309393, at *7 (claims against Deputy U.S. Marshals presented new context in part because "the officers involved in *Bivens* were federal narcotics agents" and therefore part of "an investigatory and enforcement force," rather than members of the Marshals Service, "force[s] principally engaged in the protection of federal judicial process and the execution of warrants authorized by a judicial officer"); *Robinson v. Heinze*, No. 18-131, 2023 WL 1774998, at *5-6 (N.D.

9

Ga. Feb. 3, 2023) (finding a new context in part because U.S. Marshals are a new class of defendants, rendering the case different from *Bivens*).

Accordingly, the Court finds that recognizing a cause of action against courtroom Deputy U.S. Marshals for excessive force against a convicted and sentenced prisoner is meaningfully different and distinct from any cause of action ever before recognized by the Supreme Court as cognizable under *Bivens*. For that reason, the Court finds that plaintiff's claim against defendant presents a new *Bivens* context.

### 2. *Special Factors Analysis*

Having concluded that plaintiff's claim presents a new *Bivens* context, the Court next considers whether any special factors counsel hesitation in extending *Bivens* to a new implied cause of action. For this second consideration, the Supreme Court has stated:

> This Court has not defined the phrase "special factors counselling hesitation." The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.

*Ziglar,* 582 U.S. at 136. Even though there is no single "exhaustive list of factors that may provide a reason not to extend Bivens," separation of powers principles are "central" to the analysis. *Hernandez*, 140 S. Ct. at 743. Courts must consider "whether there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *Egbert*, 142 S. Ct. at 1798 (citation and quotation marks omitted). If "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it" and usurping Congress's role. *Id.* at 1803 (cleaned up; quoting *Ziglar*, 582 U.S. at 137). "[E]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy."

*Egbert*, 142 S. Ct. at 1803. Courts are unlikely to entertain a damages action, such as recognizing a cause of action under *Bivens*, when Congress has not authorized a damages remedy even though it has taken other action in the area and when an alternative remedial structure exists. *Farah*, 926 F.3d at 500 (citing *Ziglar*, 582 U.S. at 137-38).

The Court first considers whether an alternative remedial structure exists that counsels against extending *Bivens* liability. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807. That is "true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Here, the U.S. Marshals Service existing internal grievance procedure provides an available alternative remedial structure. Under Title 28, United States Code, Section 561(g), the Director of the Marshals Service must "supervise and direct the United States Marshals Service in the performance of its duties." By regulation, the Director "shall direct and supervise all activities of the U.S. Marshals Service including: . . . [i]nvestigations of alleged improper conduct on the part of the U.S. Marshals Service personnel." 28 C.F.R. § 0.111(n). An individual aggrieved by a Deputy Marshal may file a grievance alleging improper conduct using a complaint form found at: https://www.usmarshals.gov/sites/default/files/media/document/complaint-form.pdf. In addition, the Office of Professional Responsibility within the U.S. Marshals Service also accepts allegations of misconduct by mail.[3] This is a comparable remedial scheme to that of the Border Patrol in *Egbert*. Numerous courts have concluded that the presence of

---

[3] *See* U.S. Marshals Service Office of Professional Responsibility, https://www.usmarshals.gov/who-we-are/office-of-professional-responsibility; *Goodale v. Seguin*, No. SA-22-CV-00031-XR, 2022 WL 17084400, at *5 (W.D. Texas Nov. 17, 2022).

11

that remedial scheme forecloses the extension of a *Bivens* action to Deputy U.S. Marshals. *See, e.g., Logsdon*, 2023 WL 205052, at *4; *Lewis*, 2022 WL 16924177, at *4; *Cienciva v. Brozowski, No. 3:20-CV-2045,* 2022 WL 2791752, at *10 (M.D. Pa. July 15, 2022); *McIntyre*, 2023 WL 2447424, at *7 ("Remedial schemes of this sort, whether or not they wholly satisfy a particular claimant, 'foreclose a *Bivens* action'"); *Robinson*, 2023 WL 1774998, at *7 ("[T]he U.S. Marshals Service has oversight procedures as a measure against unconstitutional conduct. As in *Egbert* with the U.S. Border Patrol, the U.S. Marshals Service is statutorily obligated to investigate 'alleged improper conduct on the part of U.S. Marshals Service personnel.' 28 C.F.R. § 0.111(n)."); *Komatsu v. United States*, Case No. 21-CV-1838, 2023 WL 317326, at *6 (S.D.N.Y. Jan. 19, 2023). "That our own independent consideration of the adequacy of such an investigation or process may question its deterrent effects is of no moment; the *Egbert* decision admonishes us not to graft a judicial remedy onto an existing grievance process that 'independently foreclose[s]' a *Bivens* cause of action." *Cienciva*, 2022 WL 2791752, at *10. "Congress has created a remedial structure in which the U.S. Marshals are to conduct their own investigation into purported abuse by those acting on its behalf." *Senatus v. Lopez*, No. 20-CV-60818, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022), *report and recommendation adopted,* No. 20-60818-CIV, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022). Thus, separation of powers principles caution against a court extending *Bivens* to a new cause of action.

In addition, some courts note that Congress has authorized the Justice Department's Inspector General to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department," include the U.S. Marshals Service. *Lewis*, 2022 WL 1694177, at *4 (citing 5 U.S.C. App. 3 § 8E(b)(2)).

An individual can report such allegations through a hotline link on the Inspector General's website: https://oig.justice.gov/hotline. *Id.*; *see also Logsdon*, 2023 WL 205052, at *4 n.2.

In short, the Court finds that plaintiff's claim against defendant arises in a new *Bivens* context that the Court finds is an improper extension of the scope of *Bivens* and cannot be recognized because special factors counsel against that extension. Accordingly, the Court grants defendant's motion to dismiss.

### B. Qualified Immunity

Even if plaintiff had set forth a valid *Bivens* action, defendant would be entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts have the discretion to consider either of these factors first. *Ivey v. Audrain Cnty.*, 968 F.3d 845, 849 (8th Cir. 2020).

As to the first prong, courts "consider whether a constitutional violation . . . in fact occurred." *Jackson v. Stair*, 944 F.3d 704, 710-11 (8th Cir. 2019). "[T]he right allegedly violated must be defined at the appropriate level of specificity . . . ." *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005). As for the second prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The Supreme Court has cautioned courts not to define clearly established law at too high a level of generality." *Ivey*, 968 F.3d at 849 (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)). Plaintiff bears the burden of proving the law is clearly established. *Wagner v. Jones*, 664 F.3d 259, 273 (8th Cir. 2011).

13

Under Supreme Court precedent regarding prisoners, the Eighth Amendment forbids unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Several factors are considered to determine what constitutes the unnecessary and wanton infliction of pain.

> "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L.Ed.2d 995 (2010). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S .Ct. 1078. The word "sadistically" is not surplusage; "'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994).

*Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). Additionally,

> [t]his is a different and less protective test than the Fourth Amendment standard that applies to "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).

*Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014).

Defendant argues that plaintiff has not pled facts showing that defendant violated plaintiff's Eighth Amendment rights. Plaintiff asserts that defendant escorted plaintiff out of the courtroom at the conclusion of his sentencing hearing and, "[a]ccording to [defendant] I was not moving fast enough and he start[ed] shoving me toward the door."

14

(Doc. 1, at 5). Plaintiff asserts that defendant's shoving "caused my neck to snap back" and he had had spinal surgery twelve days prior. *Id.* Defendant argues that under *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985), "[n]ot every push or shove . . . violates a prisoner's constitutional rights." Defendant asserts that, even taking plaintiff's allegations as true, plaintiff fails to include any facts suggesting that defendant acted "maliciously or sadistically to cause harm." (Doc. 36-1, at 16). Defendant argues that, to the contrary, plaintiff asserts in his complaint that defendant shoved him because he "was not moving fast enough," "suggesting an entirely legitimate and 'good faith effort to . . . restore discipline.'" (*Id.*). Defendant analogizes this case to *Black Spotted Horse*, where the Eighth Circuit stated "[t]he allegation that defendant caused a relatively minor injury to appellants' leg, poked him in the back, and spoke in a belligerent tone fails to state a claim under the Eighth Amendment." (*Id.* at 16-17). Turning to the second prong, defendant argues that plaintiff fails to establish that defendant's conduct violated a clearly established right. Defendant asserts that "existing precedent in the Eighth Circuit and the Supreme Court does not clearly establish that the Eighth Amendment prohibits a deputy U.S. Marshal . . . from touching, guiding, or even 'shoving' toward the door a prisoner who is leaving the courtroom slowly." (*Id.* at 18).

Here, plaintiff has not responded to defendant's motion to dismiss and thus has not met his burden of showing that a right is clearly established. The Court need not determine whether plaintiff has sufficiently pled facts demonstrating defendant violated plaintiff's constitutional rights. The plaintiff has not provided, nor has the Court found, case law establishing plaintiff's right was clearly established. "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus . . . officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotations omitted). Plaintiff has failed to alleged facts that would show

15

defendant violated any legal rule that was clearly established by the circumstances. In addition, plaintiff has not identified any case law that would have informed defendant he was violating plaintiff's constitutional rights by his actions in the courtroom. Accordingly, even if the Court were to extend a *Bivens* action to cover plaintiff's claim, it would find defendant entitled to qualified immunity.

## V. CONCLUSION

For the reasons set out above defendant's motion to dismiss (Doc. 36) is **granted** and this case is **dismissed**.

**IT IS SO ORDERED** this 8th day of June, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa